# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**[2] FELIX DE LOS SANTOS-HERNANDEZ,**
Defendant.

**CRIMINAL NO. 21-002 (DRD)**



RECEIVED & FILED
CLERK'S OFFICE
APR 18 2023
US DISTRICT COURT
SAN JUAN, PR

## PLEA AGREEMENT

**TO THE HONORABLE COURT:**

The United States of America, Defendant, Felix De Los Santos-Hernandez, and Defendant's counsel, Miguel Oppenheimer, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Count One of the Indictment:

<u>Count One:</u>



Beginning on a date unknown and continuing to on or about December 29, 2020, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, the Defendant, Felix De Los Santos-Hernandez, and other persons, did knowingly and intentionally combine, conspire, confederate and agree with each other, and with other diverse persons, to commit an offense defined in 46 U.S.C. § 70503, to wit: to knowingly and intentionally possess with intent to distribute five (5)

kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, aboard a vessel subject to the jurisdiction of the United States. All in violation of 46 U.S.C. §§ 70503(a)(1), & 70506(b).

### 2. **Stipulation as to the Amount of Narcotics**

The United States and the defendant, Felix De Los Santos-Hernandez, stipulate the defendant shall be accountable for the possession with intent to distribute at least 50 kilograms but less than 150 kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance.

### 3. **Maximum Penalties**

Count One: In regards to Count One, the penalty for the offense charged is a term of imprisonment which shall not be less than ten (10) years and up to life imprisonment, a fine not to exceed ten million dollars ($10,000,000), and a term of supervised release of at least five (5) years in addition to any term of incarceration, pursuant to 46 U.S.C. § 70506(a) and 21 U.S.C. § 960(b)(1)(B).

### 4. **Sentencing Guidelines Applicability**

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. § § 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

## 5. Special Monetary Assessment

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

## 6. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

## 7. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

## 8. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines

calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

| SENTENCING GUIDELINES CALCULATIONS ~~COUNT ONE~~ ~~21 U.S.C. § 841(a)(1), 846~~ | | | | | |
|---|---|---|---|---|---|
| Base Offense Level pursuant to U.S.S.G. § 2D1.1(c)(3) (at least 50 KG but less than 150 KG of Cocaine) | | | | | 34 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | | | | | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | | | | | **31** |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |

*(handwritten annotations: "ALP", "(N)", "FDH", "46 U.S.C. § 70503, 70506")*

## 9. Sentence Recommendation

As to Count One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree to recommend the mandatory minimum sentence of 120 months of imprisonment, regardless of the Criminal History Category determined by the Court.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

## 10. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant.

## 11. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 120 months or below, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

## 12. No Further Adjustments or Departures



The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

## 13. Satisfaction with Counsel

Defendant is satisfied with counsel, Miguel Oppenheimer, Esq., and asserts that counsel has rendered effective legal assistance.

## 14. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

## 15. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts

that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 16. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

### 17. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 18. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 19. Dismissal of Remaining Counts

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Indictment pending against Defendant in this case.

### 20. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

### 21. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

### 22. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 23. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror,

to hold public office, and to lawfully possess a firearm.

W. STEPHEN MULDROW
United States Attorney

Max Perez-Bouret
Assistant U.S. Attorney, Chief
Transnational Organized Crime Section
Dated: April. 17. 2023

Miguel Oppenheimer, Esq.
Counsel for Defendant
Dated: 4/18/2023

Maria Montañez-Concepción
Assistant U.S. Attorney, Deputy Chief
Transnational Organized Crime Section
Dated: April. 17. 2023

Felix De Los Santos-Hernandez
Defendant
Dated: 4/18/23

Antonio L. Perez-Alonso
Assistant U.S. Attorney
Dated: 4/17/2023

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: _____ 4/18/23 _____          _____
                                        Felix De Los Santos-Hernandez
                                        Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: _____ 4/18/23 _____          _____
                                        Miguel Oppenheimer
                                        Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Felix De Los Santos-Hernandez admits that Defendant is guilty as charged in the Indictment and admits the following:

On November 15, 2020, Homeland Security Investigations (HSI) Special Agents received information regarding a Drug Trafficking Organization (DTO) looking for transportation means to introduce hundreds of kilograms of cocaine into Puerto Rico. During the investigation, an HSI Undercover (UC) Officer acting as a boat owner and captain was introduced to suspected members of the DTO. In a first meeting between the HSI UC Officer and the DTO, where the defendant, Felix De Los Santos-Hernandez, was present, the DTO requested to the HSI UC Officer his services as boat captain to help them introduce cocaine coming from Venezuela and the Dominican Republic into Puerto Rico.

During a second meeting between the HSI UC Officer and two members of the DTO, including the defendant Felix De Los Santos-Hernandez, members of the DTO handed $5,000.00 USD in cash to the HSI UC to be used for fuel expenses in a cocaine smuggling venture at a date to be set. The DTO also provided specific coordinates to the HSI UC Officer with instructions for a sea transfer of cocaine from a DTO vessel to the HSI UC Officer's smuggling vessel. The coordinates were located approximately 130 nautical miles south of Maunabo, Puerto Rico.

Between December 18, 2020 and December 24, 2020, DTO members contacted the HSI UC Officer, who was still acting as a boat captain, and instructed him to make

his way to the location for the sea transfer using the previously provided coordinates to pick up approximately 300 to 320 kilograms of cocaine. During several conversations between the DTO and the HSI UC Officer, information was documented indicating that the narcotics for this smuggling venture were coming from Venezuela possibly in an old and slow fishing vessel. The DTO also requested to the HSI UC Officer to deliver $75,000.00 USD in cash to the DTO members during the sea transfer.

HSI immediately shared this information with the appropriate agencies in an attempt to locate and interdict a potential cocaine smuggling load headed to Puerto Rico. On December 26, 2020, a Joint Interagency Task Force South Maritime Patrol Aircraft (MPA), using the information provided by the DTO to the HSI UC Officer, located a Surface Target of Interest (STOI) approximately 100 miles south of Maunabo, Puerto Rico. The information was immediately relayed to the United States Coast Guard (USCG) who deployed the Richard Dixon Cutter to locate and investigate the target.

Once the USCG located the target, they approached what they identified as a fishing vessel and during the approach and inspection process, a crew member from the fishing vessel freely stated to a USCG Boarding Team (BT) member that they were carrying drugs. The vessel was registered in Venezuela and it matched the description previously documented during several calls between the DTO and the HSI UC Officer.

The USCG requested and obtained permission to board the vessel from the Recognized Government of Venezuela and during the boarding process they

encountered 6 Venezuelan Citizens. During the initial approach and before the boarding process, USCG members observed suspicious packages on the forward deck area wrapped in a manner consistent with drug contraband. Once the boarding was authorized, USCG BT members approached the suspicious packages and conducted a field test of 2 of the packages yielding positive results for the presence of cocaine. A sample of the bales eventually lab-tested positive for cocaine. A total of 16 bags or bales were located next to each other. The approximate weight of the 16 bales at the time of encounter was 300 kilograms. Once the field test was completed, the USCG immediately detained all 6 crew members, pending further investigation.

After the interdiction at sea, HSI agents set up a controlled delivery of sham narcotics to members of the DTO. In conversations between the HSI UC and a member of the DTO, the UC agreed to deliver the cocaine to the DTO in exchange for $75,000. Four individuals showed up to the agreed-upon location to pick up the sham cocaine in a red Jeep Grand Cherokee, including the defendant, Felix De Los Santos-Hernandez. During a search of the Grand Cherokee, agents found approximately $75,020 in cash.

For purposes of this plea agreement, the defendant, Felix De Los Santos-Hernandez admits that he did knowingly and intentionally combine, conspire, confederate and agree with others, to possess with intent to distribute at least 50 kilograms but less than 150 kilograms of cocaine aboard a vessel subject to the jurisdiction of the United States.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

At trial, the United States would have proven beyond a reasonable doubt that defendant Felix De Los Santos-Hernandez is guilty as charged in Count One of the Indictment. Discovery was timely made available to Defendant for review.


_____

Antonio L. Perez-Alonso
Assistant U.S. Attorney
Dated: 4/17/2023


_____

Miguel Oppenheimer, Esq.
Counsel for Defendant
Dated: 4/18/23


_____

Felix De Los Santos-Hernández
Defendant
Dated: 4/18/23